Not for Publication

**United States District Court
for the District of New Jersey**

| | |
|---|---|
| BERGEN DELAWARE REALTY, LLC, a New Jersey Limited Liability Company, | |
| Plaintiff, | Civil No: 15-2888 (KSH) |
| V. | |
| THE RYLAND GROUP, INC., a Maryland Corporation, and TARABICOS GROSSO, LLP, a Delaware Limited Liability Partnership, | **OPINION** |
| Defendants. | |

**Katharine S. Hayden, U.S.D.J.**

This case comes before the Court following a series of complicated real estate transactions resulting in an Escrow Agreement between plaintiff Bergen Delaware Realty, LLC ("Bergen") and defendants Tarabicos Grosso, LLP ("Tarabicos") and The Ryland Group, Inc. ("Ryland"), which they signed on September 20, 2013. (D.E. 3-2, Ex. A, "Escrow Agreement.") On April 9, 2015, Bergen filed a complaint in New Jersey state court, asserting four claims arising from Ryland's alleged failure to fulfill its obligations under the Escrow Agreement. On April 23, 2015, the complaint was removed to this Court. Ryland and Tarabicos now move to dismiss Tarabicos from the case pursuant to Federal Rules of Civil Procedure (12)(b)(6) and to transfer the case to the District of Delaware pursuant to 28 U.S.C. § 1404.

I. **Motion to Dismiss Tarabicos**

Tarabicos was drawn into this litigation solely because it is named in the Escrow Agreement as the escrow agent. As to its duties, the Escrow Agreement provides:

> In the event of a dispute between the Purchaser and Seller and/or the
> Escrow Agent as to the disposition of the Escrow Deposit, Escrow

1

> Agent is authorized to commence an interpleader action and pay the Escrow Deposit subject to the dispute into the registry of the Superior Court of the State of Delaware in and for New Castle County, or into the Clerk of the United States District Court for the District of Delaware for determination of disposition. Upon such deposit, the responsibility of the Escrow Agent as to such funds shall cease.

(Escrow Agreement, ¶ 5(b).) Bergen named Tarabicos in its complaint (D.E. 1, Ex. 3, "Compl.") "to bind it with respect to the court's determination, if any, as to the escrowed funds." (Compl. ¶ 12.) On April 24, 2015, Tarabicos filed an interpleader action in the District of Delaware and on or around May 14, 2015, Tarabicos remitted the escrowed funds in the amount of $703,000 to the United States District Court for the District of Delaware. (D.E. 4, Ex. A, "District Court of Delaware Interpleader Order"; D.E. 6, Ex. A, "Letter Confirming Transfer of Escrowed Funds.") Ryland and Tarabicos now argue that the latter's responsibilities as to the escrowed funds have ceased. It appears undisputed that the escrowed funds have been deposited into the court and that Tarabicos has performed its obligations under the Escrow Agreement. As such, the motion to dismiss Tarabicos is granted.

## II. Motion to Transfer to the District of Delaware

### a. Factual and Procedural History

At least as early as 2003, real estate developer Jerry Heisler formed a number of investment companies, collectively called "Reybold[1]," which designed, planned, and owned a large residential development in Bear, Delaware known as the Meridian Crossing Development ("Meridian Crossing"). (Compl. ¶¶ 11, 13.) On March 14, 2006, Reybold sold approximately 203 lots (the "Property") in Meridian Crossing to The Atlantic Companies. (Compl. ¶ 13.) As

---

[1] Reybold is made up of seven limited liability companies: Reybold Venture Group XI-A, LLC, Reybold Venture Group XI-B, LLC, Reybold Venture Group XI-C, LLC, Reybold Venture Group XI-D, LLC, Reybold Venture Group XI-E, LLC, Reybold Venture Group XI-F, LLC, and Reybold Venture Group XV, LLC.

part of the transaction, The Atlantic Companies mortgaged the Property to The Provident Bank in exchange for a mortgage loan of approximately $22 million. (Compl. ¶ 11.)

After the sale, Reybold retained its ownership interest in approximately 600 other lots and certain common areas in Meridian Crossing. (Compl. ¶ 13.) As the sponsor and majority developer of Meridian Crossing, Reybold filed a Declaration of Covenants and Restrictions pursuant to which it would, in perpetuity, retain authority to approve architectural and other aesthetic aspects of the development. (Compl. ¶ 14.)

In 2012, The Atlantic Companies defaulted on its mortgage repayment. (Compl. ¶¶ 9, 11.) Through a foreclosure action, sheriff's sale, and transfer of deed, Bergen, which is a limited liability company organized under New Jersey law for the purpose of taking title to the Property with its principal place of business in Iselin, became the owner of the Property. (Compl. ¶¶ 8, 15, 17.) Bergen claims that neither it, nor any of the Property's predecessor owners pursued development of the Property. Notwithstanding this assertion, after Bergen acquired title to the Property, Reybold asserted "eight categories of claims totaling over $800,000" all relating to alleged violations of the covenants and restrictions from development on the Property. (Compl. ¶¶ 16, 17.)

With those claims still outstanding, on August 16, 2012, Bergen and Ryland negotiated, in writing, a sale of the Property to Ryland.[2] (Compl. ¶ 18.) Ryland is a Maryland corporation, with its principal place of business in California, that builds and develops residential property. (Compl. ¶ 10; D.E. 1, "Notice of Removal" ¶ 6.) When Ryland refused to close on the sale because "it could neither come to terms with Reybold regarding future development plans nor

---

[2] In early 2012, when Bergen began negotiating the sale of the property, it negotiated with Cornell Homes. (Compl. ¶ 18.) Cornell Homes subsequently merged with or acquired Ryland. This Court will refer to the companies as Ryland for purposes of this opinion.

3

obtain architectural approvals," Bergen sued Ryland in Delaware Chancery Court. (Compl. ¶ 19.)

Eventually, Bergen and Ryland agreed to close on the Property on terms set forth in two written agreements—the Sales Agreement and Modified Sales Agreement (D.E. 3-3, Ex. C, "Sales Agreement" and D.E. 3-2, Ex. B, "Modified Sales Agreement").[3] As a means of dealing with Reybold's still unresolved claims, on September 20, 2013, Bergen and Ryland agreed to close on the sale so long as Bergen deposited $500,000 and Ryland deposited $203,000 into an escrow account maintained by Tarabicos. (Escrow Agreement, ¶¶ 1-2; Compl. ¶¶ 21, 24.) The Escrow Agreement was designed to work in conjunction with the sales agreements and fund the resolution of potential claims made by Reybold against the Property. (Compl. ¶ 21.) It contained specific provisions: (1) the escrowed funds could only be used to resolve claims designated in the Escrow Agreement; (2) Ryland would have the "sole authority to negotiate" resolution of the claims, but needed Bergen's written consent to "consummate an agreement"; (3) "Ryland had authority to commence litigation … to obtain a determination that the amounts sought by Reybold were not due and owing and did not 'run with the land'"; and (4) if escrowed funds were released, Ryland's funds would be released first. (Compl. ¶ 22.) At this same time, Ryland and Bergen executed a Release and Indemnification Agreement (D.E. 3-3, Ex. D, "Indemnification Agreement").

Following the execution of the Escrow Agreement, Ryland and Reybold negotiated a settlement agreement that disposed of the remaining claims through a release of the escrowed funds. (Compl. ¶¶ 22, 25.) Bergen claims that, although it commented on drafts of that

---

[3] The original sales agreement was entered into by Bergen and Meridian Crossing Provident, LLP. Through the Escrow Agreement, Meridian Crossing Provident, LLP assigned all of its rights, title, and interest in and to the Sales Agreements to Ryland. For simplicity, this Court will refer only to Ryland.

4

settlement agreement, it never consented to a final settlement. (Compl. ¶ 30.) Bergen further asserts that Ryland demanded that it sign the settlement agreement, but refused to justify the release of the escrowed funds. (Compl. ¶¶ 30, 32.) Following significant back and forth between the parties about their respective obligations, Bergen filed a four-count complaint in New Jersey state court in April, 2015. (Compl. ¶¶ 31-37.) Bergen alleged that (1) Ryland breached its obligations under the Escrow Agreement, asserting contract claims as well as violations of the covenant of good faith and fair dealing and breaches of Ryland's fiduciary duties; and (2) sought a declaratory judgment that Ryland had failed to fulfill its obligations under the Escrow Agreement.

On April 23, 2015, Ryland removed the case to federal court, and four days later it filed a separate complaint in the United States District Court for the District of Delaware seeking (1) a declaratory judgement that Ryland had complied with the Escrow Agreement; (2) damages for Bergen's breach of the Escrow Agreement; and (3) damages for Bergen's fraudulent inducement of Ryland to enter into the Escrow Agreement and Modified Sales Agreement. (D.E. 3-3, Ex. F, "Ryland Compl. For Declaratory Relief and Damages.") Thereafter, Ryland filed this motion to transfer the New Jersey complaint to the District of Delaware and to dismiss Tarabicos. Bergen filed opposition.

### b. Legal Arguments Relating to Transfer to the District of Delaware

Where a valid forum selection clause points to the selection of a federal forum other than the forum in which a case has been filed, 28 U.S.C. § 1404(a)[4] may be used to transfer the case. *Atlantic Marine Const. Co v. U.S. Dist. Ct. For W. Dist. Of Tex.,* 134 S. Ct. 568, 581 (2013). "A

---

[4] 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

5

district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575 (holding that § 1404(a) acts as a codification of the doctrine of forum non conveniens and does not call for the outright dismissal of a case). A choice of forum articulated in the forum selection clause "deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 582.

Under the law then, a valid forum selection clause carries significant weight. Here, there is no specific forum selection clause in the Escrow Agreement, but the other agreements between the parties and surrounding the sales transaction do contain such provisions. The Sales Agreement between Ryland and Bergen, for example, broadly provides:

> In the event of any dispute or controversy arising out or relating to this Agreement or the parties' compliance therewith, it is agreed that the exclusive forum for determination of any and all such disputes or controversies shall be the appropriate trial court in the State of Delaware.

(Sales Agreement, ¶¶ 21(f), 21(h).) Similarly, their Indemnification Agreement, executed at the same time as the Amended Sales Agreement and Escrow Agreement, states:

> Any legal suit, action or proceeding against any party arising out of or relating to this agreement shall be instituted in any federal or state court in the state of Delaware and all parties waive any objections which they may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and all parties hereby irrevocably submit to the exclusive jurisdiction of any such court in any suit, action or proceeding.

(Indemnification Agreement, ¶9)(emphasis omitted.)

In context, the Escrow Agreement very clearly rests on the defined relationship of the parties set forth in the Sales Agreement, Amended Sales Agreement, and the Indemnification Agreement. The Escrow Agreement discusses the relationship of the parties and the Sales and Amended Sales Agreement:

6

> Meridian Crossing Provident, LLC, a Delaware limited liability company ("MCP") and Seller, are parties to that certain Agreement for Sale of real Estate, as amended (the "Agreement") for the purchase and sale of 203 Lots located in the community know as Meridian Crossing, located in New Castle County, Delaware (the "Property") all as more fully described in the Agreement.

(Escrow Agreement, pg. 1, Background.) The Indemnification Agreement is also referenced: "The Purchaser shall have all decision making authority with respect to such representation and litigation, subject to the terms of this Escrow Agreement and Release and Indemnification Agreement." (Id. ¶ 3(c).) And the terms of the Indemnification and Sales Agreements continue to be enforceable:

> "the parties' rights, duties, and obligations under the Second Modification and Amendment to that Agreement for Sale between Meridian Crossing LLC and Bergen Delaware Realty, LLC, that certain Escrow Agreement by and between Seller and Buyer, and under this Agreement, all of which expressly survive the closing."

(Indemnification Agreement, ¶ 4.)

Given the demonstrated interrelationships among the parties' relevant agreements, the issue becomes whether the forum selection clauses in the Sales and Indemnification Agreements cover litigation over the companion Escrow Agreement as "[a] legal suit, action or proceeding against any party arising out of or relating to" the Sales and Indemnification Agreements. "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). "The ordinary meaning of the phrase 'arising in relation to' is …that the origin of the dispute has some 'logical or causal connection'" to the underlying agreement. *Id.* at 1074; *accord Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994) (distinguishing a dispute which "arises under" an agreement from a dispute which "arises out of" an agreement).

7

In opposing transfer, Bergen argues that the Sales and Indemnification Agreements are peripheral and that Ryland raises them as red herrings—in short, that the Escrow Agreement does not "arise out of" the other agreements. But the selection clause need not be in the specific document in dispute, as long as the document that contains the forum selection clause is "vital to the relationship between the parties giving rise to the litigation." *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F. Supp. 671, 677 (D.N.J. 1993) (Simandle, J.). The Escrow Agreement was created to deal with potential claims by Reybold against Ryland because of the transfer of the Property through the Sales and Amended Sales Agreement. The Escrow Agreement therefore cannot be considered in isolation because it exists because of the other agreements.

Bergen also argues that the transfer is against public interest, but such contentions "will rarely defeat a motion to transfer." *Atlantic Marine Const. Co*, 134 S. Ct. at 581. Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Const. Co*, 134 S. Ct. at 581, n.6; *see also Jumara*, 55 F.3d at 879 (noting addition public interests: "the enforceability of the judgment"; "practical considerations that could make the trial easy, expeditious, or inexpensive"; and "the familiarity of the trial judge with the applicable state law in diversity cases"). Bergen fails to identify any public interest factors that bear on this Court's transfer of the case to Delaware and argues only that the public interest factors should not tip the scale in favor of Delaware from New Jersey.

Bergen additionally argues that, under the first-filed rule, this Court should not transfer the case because Ryland sued Bergen in the District of Delaware. Generally, the first-filed rule

"gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *DePuy Synthes Sales, Inc. v. Edwards*, 23 F. Supp. 3d 472, 477 (E.D. Pa. 2014) (quoting *E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969, 971 (3d Cir.1988) *aff'd,* 493 U.S. 182 (1990)). However, the Court's analysis of the selection clauses in the documents governing the sale of the Property weakens the first-filed rule, which is not meant to "render[] such [forum selection] clauses only as valuable as winning a race to the courthouse, undermining the 'vital interests of the justice system' which forum selection clauses promote." *DePuy Synthes Sales, Inc.,* 23 F. Supp. 3d at 479. Bergen also argues that Ryland filed the federal lawsuit in Delaware to "manipulate this court into transferring the dispute to Delaware where they presume they will be given preferential treatment." However, in light of the forum selection clause analysis, this Court need not consider Ryland's motivation in filing the Delaware action.

There are other reasons to transfer to the District of Delaware. Tarabicos was directed to deposit the escrowed funds discussed above in Delaware. The Escrow Agreement states under the "Governing Law/Construction" clause that "[t]his Escrow Agreement shall be governed by, and construed and enforced under the laws of the State of Delaware" (Escrow Agreement, ¶7), and defines "business day," to exclude any "legal holiday in the State of Delaware" (Escrow Agreement, ¶10). All indications are that the parties freely agreed to these choice of law provisions, and that Bergen never objected to them or sought to negotiate or comment on them. Taken as a whole, these internal references to Delaware law and practice call to mind one of the public interest factors a Court considers in deciding whether or not transfer is appropriate: "the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Const. Co*, 134 S. Ct. at 581, n.6.

**III.     Conclusion**

For the foregoing reasons, the Court grants the motion to dismiss Tarabicos and the motion to transfer this case to the District of Delaware.  An appropriate order will be entered.

|  |  |
|---|---|
| | /s/ Katharine S. Hayden |
| Date: December 28, 2015 | Katharine S. Hayden, U.S.D.J. |